STATE BOARD OF TAX APPEALS.

CITY OF NEWARK, PETITIONER, v. SUN OIL COMPANY, RESPONDENT.

Decided April 29, 1941.

For the petitioner, *James F. X. O'Brien* (by *Joseph A. Ward*).

For the respondent, *McCarter, English & Egner* (by *George W. C. McCarter* and *John Blair Moffett*).

QUINN, President. On November 28th, 1939, the City of Newark applied to the Essex County Board of Taxation for the addition to the tax rolls of the city for the year 1938, of certain specified intangible personalty alleged to be owned by Sun Oil Company, and said to have been omitted from the assessment list for that year. The application was based upon the premise that the chief office of respondent, a New Jersey corporation, was situated in the petitioner taxing district upon October 1st, 1937, and that therefore, the intangible personalty of the company was properly subject to assessment there for said year. *R. S.* 54:4-18. The county board dismissed the application for the stated reason that the "chief office"

of the company was not, as a matter of fact, shown to be situated in the City of Newark.

Respondent resists this appeal, assigning grounds other than that expressly relied upon by the County Board in justification of its action in refusing to add the property in question to the tax list. We express no opinion as to those grounds, however, since we are of the opinion that, upon the showing made before this board, the County Board's determination was correct, for the reason expressly assigned by it.

The showing of fact upon which we are asked by the city to find that the chief office of the Sun Oil Company was located in Newark on October 1st, 1937, is as follows: The company engages in the business of producing, refining and marketing petroleum oils. It distributes its products in thirty-two states. Although the company is incorporated here, its executive offices are not within this state, but in Philadelphia, Pennsylvania. Its statutory registered office is maintained in the City of Jersey City, but all of the business of the company is controlled and directed from the Philadelphia offices, where its control books and records are kept, and to which all of its regional managing agents report. The marketing and distribution of the company's products are supervised by a vice-president, whose office is at the Philadelphia headquarters and is subdivided within six regions, each of those being further divided into sales districts. The regional offices are situated in Boston, New York City, Philadelphia, Pittsburgh, Detroit and Jacksonville.

The New Jersey business of the company is restricted to distribution and sale of the petroleum products, there being no refinery within the state. There are three district sales offices within the state, at Newark, Trenton and Atlantic City. The Newark office is subordinate to the New York regional office, while the others are subject to the Philadelphia regional office.

The office of the company in Newark is appurtenant to a plant for bulk storage of oils, which stores sufficient quantities to supply the Newark district. The Newark district manager has the same type of authority and duties as each of the other district managers of the company, including those in the

Atlantic City and Trenton district offices, consisting mainly of the checking of inventories, collection of sales receipts and their deposit subject to check by the Philadelphia executives, and keeping track of the equipment of the company on lease to retail operators. All questions of the hiring of employes, fixing wages and of prices of the product sold, are controlled by the Philadelphia office. The Newark office, in short, is but a cog in an elaborate distributing mechanism. It is shown to be no different, nor any more important in its essential relationship to the company's affairs, than the Trenton or Atlantic City offices of the company, although a greater volume of business may possibly be done there than in the other New Jersey offices, as to which, however, there is no proof before us. Although none of its commercial affairs are conducted in Jersey City, other than retail sales of its products there, the statutory office of the company in that taxing district is the only office in the state representative of the company as an entirety. In these circumstances, can the Newark office be said to constitute the "chief office" of the corporation, for purposes of fixing the *situs* for taxation of its intangible personalty?

The finding of an answer to this question is not facilitated by reference to the undisputed fact that the chief office of the company, in a realistic sense, is not within the state at all. In the case of every domestic corporation, the statute contemplates the existence of *a* "chief office," and in a case such as that here presented, literal application of the test laid down by the Supreme Court in *Herdman Motor Co.* v. *State Board of Tax Appeals (Supreme Court,* 1937*)*, 119 *N. J. L.* 164; 194 *Atl. Rep.* 870, is obviously not feasible. In that case, as between the taxing district where the registered office of the company was situated but no business conducted, and that in which the corporate books and records were kept and most of the actual business was done, the latter was held the "chief office" for tax purposes. On its facts, the case is not an authority for the decision of the present controversy. In two respects, however, the opinion of the court is significant for present purposes. The court stated (at *p.* 168), as follows:

"We desire, however, to make clear that we are not to be understood as intimating, much less holding, that the 'chief' office of a corporation may not, in a given case, depend upon where the registered or principal office of a corporation is located. It is a matter of proof; and the facts and circumstances of each case must control."

A further significant factor in the Herdman case, adverted to at page 165, was the circumstance that the intangible property of the corporation had not been taxed by the taxing district in which the registered office was located. In the present case, however, the City of Jersey City has assessed the intangibles of the company for the years 1937 and 1938, and the 1937 taxes have been paid to that taxing district.

The Herdman decision not being dispositive of this case, we are free to seek authority out of the state. The closest parallel to be found in the reported cases to the situation presently under consideration is that contained in the case of *Illinois Water Service Co.* v. *Champaign County* (*Sup. Court, Ill.,* 1938), 367 *Ill.* 641; 12 *N. E. Rep.* (*2d*) 661. That case involved the question as to the domicile within the State of Illinois of a domestic corporation for the purpose of taxation of its capital stock. The statute provided that such stock was to be taxed in the municipality where the corporation's "principal office or place of business is located." The charter of the corporation in question listed the City of Reading, in Livingston County, as its principal office. The company was in the business of supplying consumers in five cities, not including Reading, with water. The general manager of the corporation did most of his business in Champaign, one of the five cities served by the company. Most of the revenues of the corporation were taken in at Champaign and in Urbana. The office in Reading was only nominal. The president of the company, however, resided out of the state, in Charleston, West Virginia, and most of the corporate records, accounts and papers were there kept and maintained. The Supreme Court of Illinois held that Reading, the registered office of the corporation, and not Champaign, where most of the business was done, was the proper *situs* for the taxation of the capital stock of the corporation. The court said:

"It is apparent that where a corporation does business in more than one place, the taxing of its capital stock at the place where it does the most business would result in endless confusion and uncertainty. The taxable *situs* might shift each year. Its principal place of business might be in one county when it was assessed, and in another when the tax was levied. Business in two counties might be approximately equal, requiring refined calculations to determine which was the taxable *situs* * * *."

The same considerations which moved the Illinois court seem to us applicable here. Surely respondent is not to be at peril of sustaining intangible personalty taxes to be assessed by any one or more of the several taxing districts in which one of its co-ordinate branch offices is located, its paramount office being out of the state. It is our view that under the peculiar circumstances here presented, the statutory office, fixed and readily determinable, should be taken to be the chief domestic office of the company for tax purposes.

We therefore are in accord with the determination made by the Essex County Board of Taxation in this matter; and same will be affirmed.